IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JOHN DAVID LANSDELL                                                    PLAINTIFF

VERSUS                                           NO. _1:18cv65-GHD-DAS_

LEE MILLER, In His Individual Capacity,
AND LEE COUNTY, MISSISSIPPI                                          DEFENDANTS

JURY TRIAL DEMANDED

<u>COMPLAINT</u>

This is a civil action to recover actual, compensatory, and punitive damages for the violations of Mr. Lansdell's constitutional rights to be free from excessive force protected by the Fourth Amendment and to adequate medical care protected by the Fourteenth Amendment and made actionable by 42 U.S.C. § 1983 and Title II of the Americans With Disabilities Act ("Title II), 42 U.S.C. § 12132. The following averments support this civil action:

PARTIES

1. The plaintiff, JOHN DAVID LANSDELL, is an adult resident citizen of Tupelo, Lee County, Mississippi.

2. The defendant, LEE MILLER, is upon information and belief an adult resident citizen of Tupelo, Lee County, Mississippi. He may be served with process by service of a complaint and summons upon him at his place of employment or residence which are unknown to Mr. Lansdell at present.

3.  The defendant, LEE COUNTY, MISSISSIPPI, is a political subdivision of the State of Mississippi.  It may be served with process by service upon its Chancery Clerk, Honorable Bill Benson, 200 West Jefferson Street, Tupelo, Mississippi 38804.

## JURISDICTION & VENUE

4.  This Court has subject matter jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1343(a)(3) (Civil Rights).

5.  Venue is proper in the Northern District of Mississippi, pursuant to 28 U.S.C. § 1391, since substantial part of the events and omissions giving rise to claim occurred in this judicial district.

## CAUSE OF ACTION

6. On, or about, the early morning of April 12, 2015, Mr. Lansdell was driving to the Huddle House on South Eason Boulevard when he was stopped by a Tupelo Police Department patrol car.

7.  There was no probable cause for the stop of Mr. Lansdell and the purported reason for the stop given to Mr. Lansdell by the patrol officer was patently untrue.

8.  After the stop, Mr. Lansdell produced his driver license and proof of insurance to the patrol officer.  Mr. Lansdell's driver license was valid and his automobile liability insurance was properly in effect.

9.  By this time, the Defendant Miller arrived at the stop and immediately acted

2

in a condescending and aggressive manner towards Mr. Lansdell.

10. The Defendant Miller questioned Mr. Lansdell and requested that Mr. Lansdell blow into a portable breath tester to determine the presence of alcohol.

11. Mr. Lansdell complied with the Defendant Miller's request. The Defendant Miller informed Mr. Lansdell the portable testing device showed the presence of alcohol but not how much alcohol was detected.

12. The Defendant Miller then performed numerous field sobriety tests on Mr. Lansdell.

13. Despite a lack of impairment, the Defendant Miller informed Mr. Lansdell that he was under arrest.

14. Prior to being handcuffed, Mr. Lansdell informed the Defendant Miller that he had a military service connected injury to his knee and to his left shoulder which required two surgeries and for which he was given a disability rating by the Department of Veterans Affairs.

15. Mr. Lansdell asked the Defendant Miller three times not to handcuff him behind his back because his shoulder impairment severely limited his range of motion and it would cause him severe pain and potentially dislocate his shoulder.

16. The Defendant Miller refused to acknowledge what Mr. Lansdell was telling him and told Mr. Lansdell to turn around, "right f***ing then," or he would add a

charge of resisting arrest against him.

17. Mr. Lansdell complied with the Defendant Miller's command and turned around. A visibly angry Defendant Miller then jerked Mr. Lansdell's arms together behind his back causing Mr. Lansdell's shoulder to dislocate, with an audible pop. Mr. Lansdell yelled in excruciating pain.

18. In response to Mr. Lansdell's injury and pain, the Defendant Miller casually told Mr. Lansdell that he would use two sets of handcuffs instead of one.

19. Mr. Lansdell asked the Defendant Miller to please handcuff him in front and not behind his back in an effort to alleviate his pain. The Defendant Miller handcuffed Mr. Lansdell behind his back and took no action to assist Mr. Lansdell or alleviate his pain.

20. Mr. Lansdell asked the Defendant Miller for medical attention due to his shoulder dislocation but was told that he would be taken to the jail to be administered a another breath test for the presence of alcohol.

21. Mr. Lansdell was then placed in the patrol officer's patrol car and transported to the Lee County Adult Detention Center ("LCADC").

22. At the LCADC, Mr. Lansdell was administered a breath test by the patrol officer under the direction of the Defendant Miller.

23. While being booked Mr. Lansdell asked again for medical attention. The

Defendant Miller told Mr. Lansdell that he was, "not playing this f***ing game with you!" Mr. Lansdell told the Defendant Miller that he was not playing a game and that he had dislocated his shoulder and was in severe pain.

24. The Defendant Miller then told Mr. Lansdell that he was sick and tired of you military guys going overseas and, "making s**t up and telling bulls**t stories to get people to feel sorry for you."

25. Mr. Lansdell asked the Defendant Miller for medical attention again which was refused by the Defendant Miller.

26. Mr. Lansdell was then turned over to the custody of the Lee County Sheriff's Department for booking and processing.

27. Mr. Lansdell again requested to be provided medical attention for his dislocated shoulder. The female booking officer told Mr. Lansdell she would see about it.

28. Mr. Lansdell was placed in a crowded holding cell with approximately twenty other people.

29. After approximately twenty to thirty minutes, Mr. Lansdell was taken out of the holding cell and was asked to write an account of what had happened to him that evening prior to his arrival at the LCADC. Mr. Lansdell had great difficulty writing the statement as he was in excruciating pain due to his dislocated shoulder.

30. After writing his account, Mr. Lansdell asked the detention officer again for medical attention and was told that it was being looked into.

31. Mr. Lansdell was placed back in the holding cell where he remained throughout the day on April 12 until the morning of April 13. Throughout this time, Mr. Lansdell suffered with a dislocated shoulder in excruciating pain.

32. On every occasion the door to the holding cell was opened by a detention officer, Mr. Lansdell asked to be provided medical attention. Every time he asked for medical attention a detention officer would inform him that it was being looked into.

33. On the morning of April 13, Mr. Lansdell and several other detainees were transported to the City of Tupelo Municipal Court for an initial appearance. Mr. Lansdell was transported to court handcuffed and manacled.

34. At his initial appearance, Mr. Lansdell informed court personnel and the Municipal Judge of his need for medical attention. Mr. Lansdell had a nominal bond set and was returned to the LCADC with instructions that he was to see someone about his dislocated shoulder.

35. Upon his return to the LCADC Mr. Lansdell was directed to the nurse's station by a female detention center.

36. Upon his arrival at the nurse's station, Mr. Lansdell was greeted by a female nurse he believed was a registered nurse and a male nurse he believed was a licensed

practical nurse.

37. After pulling his shirt off and showing the female nurse his dislocated shoulder, the female nurse asked the detention officer who escorted him to the nurse's station why she wasn't called about his dislocated shoulder over the weekend.

38. The male nurse then proceeded take Mr. Lansdell's arm and rotate it so that his dislocated shoulder would return into place. When his shoulder returned into place, it popped loudly. Mr. Lansdell was then given a shot he believes was Toradol.

39. Afterwards, the female nurse escorted Mr. Lansdell to the booking desk and told a detention officer that Mr. Lansdell was not to be placed back in the holding cell and if he was not released within fifteen minutes he was to be returned to the nurse's station.

40. Mr. Lansdell was released soon thereafter on bond and was able to return home with the help of a friend who picked him up and drove him.

41. As a result of the objectively unreasonable force used against him by the Defendant Miller, Mr. Lansdell experienced excruciating pain, increased pain, a reduction in the function of his left arm and shoulder, a reduction in his ability to perform activities of daily living, a loss of the ability to do meaningful work, and required surgery.

42. At all times relevant to this civil action the Defendant Miller acted under

color of law.

43. At all times relevant to this civil action the Defendant Miller acted in an objectively unreasonable manner and with reckless disregard for Ms. Lansdell's federally protected rights by using unreasonable and unnecessary force on the person of Mr. Lansdell.

44. At all times relevant to this civil action the Defendant Miller acted in an objectively unreasonable manner, and with deliberate indifference, and reckless disregard for Mr. Lansdell's known serious medical condition by failing to provide him with adequate or any medical attention after dislocating his shoulder.

45. The Defendant Lee County is a public entity with an affirmative duty to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability.

46. The Defendant Lee County failed to make reasonable modifications in its law enforcement policies, practices, or procedures regarding the provision of adequate or any medical attention to individuals suffering from disabilities in violation of a detainees rights to medical care under the Fourteenth Amendment and Title II.

47. The Defendant Lee County failed to train or properly train its detention officers regarding the obligations of detention officers to provide adequate or any medical attention to individuals suffering from disabilities in violation of the Fourteenth

Amendment and Title II.

48. The Defendant Lee County failed to implement policies, practices, or procedures for its detention officers regarding the recognition of and providing of adequate or any medical attention to individuals suffering from serious medical conditions in violation of the Fourteenth Amendment and Title II.

49. The Defendant Lee County failed to train or properly train its detention officers in the recognition of and providing of adequate or any medical attention to individuals suffering from serious medical conditions in violation of the Fourteenth Amendment and Title II.

50. As a result of the failure of the Defendant Miller and the Defendant Lee County to provide Mr. Lansdell with adequate or any medical attention, Mr. Lansdell experienced increased pain, a reduction in the function of his left arm and shoulder, a reduction in his ability to perform activities of daily living, a loss of the ability to do meaningful work, and required surgery.

51. As a result of the failure of the Defendant Lee County's failure to provide Mr. Lansdell with reasonable accommodation and its policy, practice, custom, or usage to discriminate against the disabled in the provision of adequate or any medical attention, Mr. Lansdell experienced increased pain, a reduction in the function of his left arm and shoulder, a reduction in his ability to perform activities of daily living, a loss of the

ability to do meaningful work, and required surgery.

52. The deprivation and delay of adequate or any medical attention for Mr. Lansdell's known serious health condition constituted an objectively unreasonable condition of confinement at the LCADC in violation of Mr. Lansdell's Fourteenth Amendment right to adequate medical care.

53. Further said deprivation and delay of adequate or any medical attention for Mr. Lansdell's known serious health condition constituted deliberate indifference to Mr. Lansdell's Fourteenth Amendment right to adequate medical care.

54. The violation of Mr. Lansdell's Fourteenth Amendment right to adequate medical care is the result of a widespread practice of depriving detainees of adequate medical care such that said deprivation constitutes a persistent and widespread practice of the Defendant Lee County.

Claim 1 (Fourth Amendment Excessive Force - Defendant Miller)

55. The Defendant Miller is liable to Mr. Lansdell for violating his Fourth Amendment right to be free from unreasonable seizure of the person through his use of excessive force which was objectively unreasonable under the circumstances.

56. As a direct and proximate result of the Defendant Miller's violation of Mr. Lansdell's Fourth Amendment rights, Mr. Lansdell suffered and continues to suffer economic, physical, and emotional injury.

Claim 2 (Fourteenth Amendment Denial of Medical Attention- Defendant Miller)

57. The Defendant Miller is liable for violating Mr. Lansdell's Fourteenth Amendment right to be free from a denial of adequate medical attention when suffering from a known serious health condition.

58. As a direct and proximate result of the Defendant Miller's violation of Mr. Lansdell's constitutional rights, Mr. Lansdell suffered and continues to suffer economic, physical and emotional injury.

Claim 3 (Fourteenth Amendment Denial of Medical Care - Lee County)

59. The Defendant Lee County had in place, at all relevant times to this civil action, unconstitutional policies, practices, customs or usages which authorized and/or mandated and/or condoned and/or ratified the denial of medical attention to detainees with known serious medical conditions.

60. As a direct and proximate result of the Defendant Lee County's violation of Mr. Lansdell's constitutional rights, Mr. Lansdell suffered and continues to suffer economic, physical, and emotional injury.

Claim 4 (Title II Disability Discrimination - Lee County)

61. The Defendant Lee County is liable to Mr. Lansdell for violating his right, under Title II of the ADA, to be free from disability discrimination through its failure to reasonably accommodate him by providing adequate or any medical attention for his

disabling impairment.

62. The Defendant Lee County's failure to implement policies, practices and procedures and failure to train its detention officers in accommodating the needs of detainees with disabilities by providing adequate medical attention violated Mr. Lansdell's right, under Title II of the ADA, to be free from disability discrimination through its failure to reasonably accommodate him by providing adequate or any medical attention for his impairment based on his disability.

63. The Defendant Lee County is vicariously liable to Mr. Lansdell for the acts and omissions of its detention officers.

64. As a direct and proximate result of the Defendant Lee County's violation of Mr. Lansdell's rights, under Title II of the ADA, Mr. Lansdell suffered economic injury, physical pain and suffering, and emotional injury which continues to the present.

PRAYER FOR RELIEF

65. Mr. Lansdell prays for the following relief:

1. actual damages for economic harm in an amount to be determined by the trier of fact;

2. actual damages for past, present and future medical expenses;

3. compensatory damages for past, present and future physical pain and suffering, emotional distress, inconvenience, mental anguish, humiliation, shame, loss of

self-esteem, fear, embarrassment, and loss of enjoyment of life which Mr. Lansdell has suffered or may suffer in the future;

    4. punitive damages, as against the individual defendant only;

    5. reasonable attorneys' fees; and

    6. reasonable costs.

    Respectfully submitted, this the 12th day of April, 2018.

/s/ Victor Israel Fleitas

VICTOR I. FLEITAS
MS BAR NO. 10259
R. SHANE MCLAUGHLIN
MS BAR NO. 101185

McLaughlin Law Firm
338 North Spring Street, Suite 2
Tupelo, Mississippi 38804
(662) 840-5042 / Phone
(662) 840-5043 / Facsimile
rsm@mclaughlinlawfirm.com / E-mail

Victor I. Fleitas, P.A.
452 North Spring Street
Tupelo, Mississippi 38804
662.840.0270 / Phone
662.840.1047 / Facsimile
fleitasv@bellsouth.net /Email

Attorneys for John David Lansdell