IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JOHN DAVID LANSDELL                                                                               PLAINTIFF

v.                                                      CIVIL ACTION NO. 1:18-cv-00065-GHD-DAS

LEE MILLER, In His Individual Capacity; and
LEE COUNTY, MISSISSIPPI                                            DEFENDANTS

OPINION

Presently before the Court is the Defendant Lee Miller's motion for qualified immunity, the Defendant Lee County, Mississippi's motion for summary judgment, and the Defendant Lee Miller's motion for partial summary judgment or other relief based on judicial estoppel. Upon due consideration, the Court finds that the motions for qualified immunity and summary judgment should be granted and that the motion for partial summary judgment is moot.

*A. Factual and Procedural Background*

The Plaintiff John Lansdell was arrested by Tupelo City Police Department officers after a traffic stop on April 12, 2015, for careless driving and DUI. [Compl., Doc. 1, at pp. 2-3]. During the traffic stop, Lansdell mentioned to the on-scene officers, including Defendant Lee Miller, that he had a pre-existing shoulder injury incurred during military service, and he asked to be handcuffed with his arms in front of his body. [Compl. at p. 3]. The arresting officers declined to do so, citing departmental policy, and cuffed Lansdell with his arms behind his body, ultimately using two sets of handcuffs to do so. [Compl. at p. 4]. Lansdell was then transported to the Lee County jail. [Compl. at p. 4]. Upon arrival at the jail, Miller removed the handcuffs and cuffed Lansdell with his arms in front of his body. Lansdell failed a breathalyzer test at the jail and was booked for DUI. [Compl. at p. 4].

1

By this time, Lansdell had asked for medical care, stating that his shoulder was causing him pain. [Compl. at p. 5]. Miller gave Lansdell two options: to be immediately taken to the hospital for medical care, at which time he would then be transported back to the jail to be processed, or to be first processed and bailed out of jail and to then seek medical attention. [Lansdell deposition, Doc. 67-2, at p. 53]. Lansdell opted to be processed and bailed out first and to then seek medical attention. [Id.] During processing, however, it was discovered that Lansdell had an outstanding warrant for his arrest on a previous charge. [Id. at p. 58]. Given the warrant, Lansdell was informed he would be required to stay in jail overnight and to appear before a municipal judge the next morning regarding the warrant. [Id.]

Lansdell remained in jail overnight and appeared before a City of Tupelo Municipal Court judge the next day. Upon his arrival back at the jail but prior to his release that same day on bond, Lansdell was examined by a nurse practitioner, who determined that his shoulder was dislocated and provided him with medical treatment. [Compl. at pp. 6-7].

Lansdell subsequently filed this action pursuant to Section 1983 and the Americans with Disabilities Act ("ADA") on April 12, 2018, alleging, *inter alia*, that Miller and Lee County violated his Fourth Amendment right to be free from excessive force and his Fourteenth Amendment right to adequate medical care. The Defendants then filed the instant motions pursuant to Rule 56 of the Federal Rules of Civil Procedure, asserting that the Plaintiff's claims against them should be dismissed.

### B. *Standard of Review*

#### 1. Summary Judgment

This Court grants summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact

2

and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). When the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

### 2. Qualified Immunity

Miller has asserted that he is protected from liability by the doctrine of qualified immunity. "[Q]ualified immunity serves to shield ... government officials from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively

3

reasonable in light of then clearly established law." *Thompson v. Upshur County, Texas*, 245 F.3d 447, 456 (5th Cir. 2001); see *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) ("Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right.") (quoting *Mace v. City of Palestine, Tex.*, 333 F.3d 621, 623 (5th Cir. 2003)). Qualified immunity calls for a bifurcated test in which the court must first determine (1) "whether the plaintiff has alleged a violation of a clearly established statutory or constitutional right that was clearly established at the time of the challenged conduct and, if so, (2) whether the defendant [official's] conduct was objectively unreasonable." *Ashcroft v. al–Kidd*, 563 U.S. 731 (2011); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "Once a defendant asserts the qualified immunity defense, '[t]he plaintiff bears the burden of negating qualified immunity.'" *Id.* (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). "Despite this burden-shifting, all reasonable inferences must be drawn in the non-movant plaintiff's favor." *Id.* (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

Importantly, a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. *Ashcroft*, 563 U.S. at 741. In other words, "existing precedent must have placed the statutory or constitutional question" confronted by the official "beyond debate." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). The U.S. Supreme Court has thus stressed that a plaintiff's burden of demonstrating that defendants violated "clearly established law" requires not merely a citation to generalized principles of law, but, rather, specific authority which "placed the statutory or constitutional question" confronted by the official "beyond debate." *Id.* The Fifth Circuit has similarly written that, in the qualified immunity context, "[w]e do not require that an official demonstrate that he did not violate clearly established

federal rights; our precedent places that burden on plaintiffs." *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997). Making the plaintiff's burden in this context even more difficult, the Supreme Court wrote in *City and County of San Francisco v. Sheehan*, 575 U.S. 600 (2015), that, to establish that any supportive precedent was "clearly established," the plaintiff must be able to cite either a decision from that Court or a "robust consensus of cases of persuasive authority in the Courts of Appeals." See also *Crawford v. Desoto Cty. Sheriff's Dep't*, No. 3:19CV013-MPM-RP, 2020 WL 55611, at *4 (N.D. Miss. Jan. 6, 2020).

### 3. Municipal Liability

Under *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978) and its progeny, a municipality may only be held liable under 42 U.S.C. § 1983 for violating a citizen's constitutional rights if "the governmental body itself 'subjects' [that] person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51 (2011). Governmental entities are "responsible only for [their] own illegal acts" and are "not vicariously liable under § 1983 for [their] employees' actions." *Id.* Thus, there is no respondeat superior liability under § 1983; rather, the key to municipal liability is demonstrating that a deprivation of a constitutional right was inflicted pursuant to an official policy or custom of the municipality in question. *Monell*, 436 U.S. at 694. The alleged unconstitutional conduct asserted "must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

To establish constitutional liability under *Monell*, a plaintiff therefore must demonstrate (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247-249 (5th Cir. 2003). A "policy

or custom" can be either (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *McGregory v. City of Jackson*, 335 Fed. App'x 446, 448-449 (5th Cir. 2009); *Crawford v. Desoto Cty. Sheriff's Dep't*, No. 3:19CV013-MPM-RP, 2020 WL 55611, at *5 (N.D. Miss. Jan. 6, 2020).

### C. Analysis and Discussion

#### 1. Defendant Miller's Motion for Qualified Immunity

##### a. Excessive Force in Handcuffing

Lansdell asserts two claims against Miller. First, that Miller used excessive force in initially handcuffing him with his hands behind his back, rather than in front, and that Miller denied him medical care for his dislocated shoulder. Miller asserts that he is entitled to receive the benefit of qualified immunity as to both claims.

To make out a *prima facie* excessive force claim, Lansdell must show (1) an injury, (2) which resulted directly and only from the use of force that was excessive to the need, and (3) the force used was objectively unreasonable. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). Lansdell is unable to do so. The Fifth Circuit has made clear that handcuffing an arrestee, even too tightly, without more, is not constitutionally excessive. *Curran v. Aleshire*, 800 F.3d 656, 662 (5th Cir. 2015); *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007); *Montes v. Ransom*, 219 Fed. App'x 378, 380 (5th Cir. 2007); *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005). It is undisputed that Tupelo City Police Department policy was to handcuff all arrestees behind their

back during transport, for safety reasons. It is further undisputed that two sets of handcuffs were ultimately used during Lansdell's transport to the jail, in an effort to accommodate Lansdell's request, and that he was handcuffed in the front once he arrived at the jail. [Doc. 67-2, at pp. 51, 53]. Under these undisputed facts, the Court rules that no excessive force was used.

Even assuming that Lansdell could establish such a *prima facie* claim, however, the Court finds that Miller is nevertheless entitled to qualified immunity on this claim because Lansdell has not alleged a violation of a clearly established statutory or constitutional right that was clearly established at the time of the challenged conduct. Lansdell has not shown that the law was clearly established that an arrestee is entitled to be handcuffed in front of his body, rather than behind it. Lansdell cites no United States Supreme Court or Fifth Circuit caselaw indicating that such a right exists. Indeed, as noted above, the Fifth Circuit has repeatedly held that "handcuffing . . . without more – is not constitutionally excessive." *Curran*, 800 F.3d at 662; *Freeman*, 483 F.3d at 417. While Lansdell cites cases from other courts that found that handcuffing could constitute excessive force under some circumstances, it is likewise true that many other courts have found that it does not do so. See, e.g., *Caron v. Hester*, No. CIV 00-394-M, 2001 WL 1568761 (Dist. N.H. Nov. 13, 2001) (holding, in case with very similar facts to the case *sub judice*, that "the question presented is whether [the plaintiff] had a clearly established right not to be handcuffed behind his back after he allegedly informed [the officer] of his shoulder injury. He did not."); *Hunt v. Massi*, 773 F.3d 361, 369 (1st Cir. 2014) (finding no constitutional violation when an allegedly injured arrestee is arrested according to standard police practices); *Rodriguez v. Farrell*, 294 F.3d 1276 (11th Cir. 2002); *Jackson v. City of Bremerton*, 268 F.3d 646, 652 (9th Cir. 2001); *Morreale v. City of Cripple Creek*, 113 F.3d 1246 (10th Cir. 1997). At best, Lansdell has shown that some courts have, under some circumstances, found that handcuffing an arrestee with a preexisting injury or condition

7

could constitute excessive force; he has fallen far short of showing that the law was clearly established at the time that an arrestee is entitled to be handcuffed in front of his body. *Hall v. Thomas*, 190 F.3d 693, 696-97 (5th Cir. 1993). Accordingly, the Court finds that Lansdell has failed to establish the violation of a clearly established constitutional right and that Miller is entitled to qualified immunity as to this claim.

### b. Denial of Medical Care

Lansdell asserts that Miller violated Lansdell's right under the Fourteenth Amendment to medical care related to his shoulder. Under the Fourteenth Amendment, "pretrial detainees are entitled to reasonable medical care unless the failure to supply that care is reasonably related to a legitimate governmental objective." *Little v. Keirsey*, 69 F.3d 536 (5th Cir. 1995). To state a claim for the unconstitutional denial of medical care, a plaintiff must show that an officer's actions or omissions were deliberately indifferent to the plaintiff's medical needs. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The Fifth Circuit, in *Batiste v. Theriot*, 458 Fed. App'x 351 (5th Cir. 2012), addressed a case with similar, but more tragic, facts. In *Batiste*, the plaintiff died a short time after being shot with a taser in a foot pursuit with police; his family sued the involved officers, alleging excessive force and the denial of medical care. The Fifth Circuit held that the on-scene officers were entitled to qualified immunity and had not acted with deliberate indifference to the plaintiff's clear medical needs because the officers at the scene never thought that "there was a serious medical emergency" and that the officers followed departmental policy regarding the procuring of medical care. *Batiste*, 458 Fed. App'x at *4-*5.

Here, likewise, there is no evidence that Miller, or any other involved officer, acted with deliberate indifference to Lansdell's medical needs. Miller indisputably offered Lansdell

8

immediate medical treatment at a nearby hospital, but Lansdell declined the offer in order to speed the booking and bail process. [Lansdell deposition, Doc. 67-2, at p. 53]. Further, it was not clear upon simple observation, even to trained medical personnel at the jail, that Lansdell's shoulder was injured. [Gavatos deposition, Doc. 67-6, at pp. 18-19]. Accordingly, Lansdell has not shown that Miller was deliberately indifferent to his clear medical needs nor that Miller acted in an objectively unreasonable manner regarding Lansdell's medical needs. The Court finds, therefore, that Miller is entitled to qualified immunity on this claim.

## 2. Lee County's Motion for Summary Judgment

Lansdell has asserted two claims against Lee County – that his Fourteenth Amendment right to medical care was violated, and that Lee County violated the ADA with regard to his medical treatment.

Lansdell was transported by Tupelo City Police Department officers to the Lee County Detention Center in the early morning hours of April 12, 2015. Within an hour of his arrival, a jailor at the Center asked him to complete a Request for Medical Care form. [Lansdell deposition, Doc. 67-2, at pp. 58-59]. Lansdell wrote on the form "I am hurting in my left shoulder." Lansdell was offered the option of obtaining immediate medical attention for his shoulder from a local hospital, but declined that option, instead choosing to seek to more quickly procure his release on bond. [Lansdell deposition, Doc. 67-2, at p. 53]. After an outstanding warrant for his arrest was discovered, Lansdell went before a Municipal Judge the next day and was granted bail. [Lansdell deposition, Doc. 67-2, at p. 66]. Upon his return to the Detention Center, he was seen and treated by the Detention Center's medical personnel, who repositioned his shoulder and administered a shot for inflammation. [Lansdell deposition, Doc. 67-2, at p. 69]. Within minutes of receiving treatment, Lansdell was released on bond. [Lansdell deposition, Doc. 67-2, at p. 70].

As noted above, in order to establish Lee County's liability in this case, Lansdell must identify a policy or custom that caused the complained-of constitutional deprivation. *Monell*, 436 U.S. at 694. Isolated incidents are not sufficient to demonstrate that a policy exists. See *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) (en banc) (holding that "[i]solated violations are not the persistent, often repeated, constant violations that constitute custom and policy"); *Estate of Pernell v. City of Columbus*, No. 1:08CV40-D-D, 2010 WL 1737638 (N.D. Miss. Apr. 28, 2010). To show that the right to medical care has been violated, a plaintiff must demonstrate that an official had subjective knowledge of a substantial risk of serious harm to the plaintiff, and the official responded with deliberate indifference. *Id.* (citing *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996).

In the case *sub judice*, within an hour of Lansdell's arrival at the Detention Center, Lee County requested that Lansdell complete a Request for Medical Care form if he had any medical issues to report. Lansdell mentioned that his shoulder was hurting, and he was then treated by medical personnel at the Center the next day, at which time his shoulder was repositioned and he was given treatment for inflammation of the shoulder. Given these undisputed facts, the Court finds that Lee County did not respond with deliberate indifference to Lansdell's medical needs. Even assuming that Lansdell could prove Lee County personnel responded with deliberate indifference, Lansdell has not identified any policy or custom of Lee County that caused his rights to be violated; as noted above, isolated incidents are not sufficient to demonstrate a policy or custom. *Bennett*, 728 F.2d at 768. Accordingly, municipal liability cannot be imposed under *Monell*. The Court thus holds that no genuine issue of material fact remains as to this claim, and Lee County is entitled to judgment as a matter of law.

As for Lansdell's ADA claim, the Court finds that he has not stated a viable claim for relief. Lansdell's complaint in this matter relates to the adequacy of the medical treatment he received incident to his arrest and detention, and it is axiomatic that "[t]he ADA does not set out a standard of care for medical treatment." *Walls v. Texas Dep't of Crim. Justice*, 270 Fed. App'x 358, 359 (5th Cir. 2008); *Hale v. Harrison Cnty. Bd. Of Supervisors*, No. 1:14-cv-61, 2017 WL 1091269 (S.D. Miss. Jan. 31, 2017). In any event, the ADA protects only those citizens who have a mental or physical impairment and who are discriminated against by reason of that impairment. *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). The record in this case demonstrates that Lansdell admittedly did not have an impairment on April 12, 2015, that qualifies as a disability under the ADA – he testified that he was employed at the time and that he was able to function normally. [Lansdell deposition, Doc. 67-2, at pp. 22-26]. Given these admissions, even if Lansdell were complaining of disability discrimination and not of the adequacy of medical treatment, he could not make out a claim for ADA discrimination. Accordingly, the Court finds that no genuine issue of material fact exists as to this claim and Lee County is entitled to judgment as a matter of law.

## D. Conclusion

For the foregoing reasons, the Court finds that the Defendant Lee Miller is entitled to qualified immunity as to the Plaintiff's claims pending against him. Accordingly, Miller's motion for qualified immunity shall be granted and the Plaintiff's claims against him dismissed. The Court further finds that the Defendant Lee County is entitled to summary judgment as to the Plaintiff's pending claims against it. Lee County's motion for summary judgment shall therefore be granted and the Plaintiff's claims against it dismissed.[1]

---

[1] Defendant Lee Miller, joined by Defendant Lee County, has also filed a motion for partial summary judgment or other relief based on judicial estoppel [69]. In the motion, Miller asserts that, should his motion for qualified immunity be denied, the Plaintiff should be judicially estopped from claiming he has suffered lost income as a result of the subject arrest because Lansdell made potentially inconsistent statements to the Veteran's Administration

An order in accordance with this opinion shall issue this day.

THIS, the 3rd day of February, 2020.

　　　　　　　　　　　　　　　/s/ Glen H. Davidson
　　　　　　　　　　　　　　　SENIOR U.S. DISTRICT JUDGE

---

regarding his employability and the reasons for his inability to engage in employment. Given the Court's ruling on the Defendant Miller's motion for qualified immunity, the Court finds that the motion for partial summary judgment is moot.